UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN LOZADA,

    Plaintiff,

v.                                                                                     Case No. 2:21-cv-235-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1972, has a high school education, and has past relevant work experience as a general office clerk. (R. 21, 86, 203). In April 2019, the Plaintiff applied for DIB, alleging disability as of October 2016 due to anxiety, depression, arthritis, osteoarthritis, chronic fatigue, a bulging disc, gastroesophageal

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

reflux disease, high blood pressure, blindness or low vision, and chronic regional pain syndrome level one of the left arm, shoulder, and breast. (R. 86–87). The Plaintiff later revised her alleged onset date to January 2018. (R. 36). The Social Security Administration (SSA) denied the Plaintiff's DIB application both initially and on reconsideration. (R. 100, 118).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in August 2020. (R. 29–65, 150–53). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 29, 37–58). A vocational expert (VE) also testified. (R. 58–65).

In a decision issued in September 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her amended alleged onset date in January 2018; (2) had the severe impairments of obesity, anxiety, depression, osteoarthritis, regional pain syndrome, left shoulder degenerative joint disease, degenerative joint disease of the knee, and diminished strength of the fourth and fifth fingers on her left hand; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a reduced range of light work subject to various

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

limitations to account for certain mental and physical impairments;[3] and (5) based upon the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 10–23). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 23).

The Appeals Council denied the Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

[3] These restrictions included that the Plaintiff could frequently reach overhead, forward, and to the side, and push or pull with her left upper extremity; could engage in no more than occasional handling or fingering with her left hand; could not use the ring finger or pinky on her left hand; and could carry up to the exertional limits for light work with her right upper extremity. (R. 15).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

§ 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other occupations in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*,

---

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."  *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual findings, it will not afford such deference to her legal conclusions.  *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's sole challenge on appeal is that the ALJ's assessment of the medical opinion of a consultative examiner, Dr. Dareld Morris, is not supported by substantial evidence.  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge lacks merit.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence."  *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources concerning what a claimant may still be able to do despite her impairments; whether

5

the claimant is limited in her capacity to engage in various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence buttressing his own opinion, while consistency deals with whether a medical source's opinion conforms to other evidence in the record. 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3

6

(M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to assess supportability and consistency but do not obligate him to explain how he weighed the other three factors. 20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence dictates a contrary finding. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, Dr. Morris conducted a consultative evaluation of the Plaintiff in July 2019. (R. 635). Dr. Morris's physical examination of the Plaintiff during that evaluation revealed, *inter alia*, that the Plaintiff's blood pressure measured 111/61;[6] that her left upper extremity and left grip/pinch strength were 3/5 and 2/5, respectively; that her right upper extremity and right grip/pinch strength were intact, with both being rated at 5/5; that her lower extremity also presented with intact bilateral strength; and that her gait and station were antalgic and slow due to lower back pain. (R. 636–37). In addition to these findings, Dr. Morris described certain of the Plaintiff's self-reported complaints and ailments, including—of relevance here— high blood pressure. (R. 636). Dr. Morris ultimately concluded that the Plaintiff

---

[6] Normal blood pressure for most adults is 120/80. *High Blood Pressure and Older Adults*, NAT'L INST. ON AGING, https://www.nia.nih.gov/health/high-blood-pressure-and-older-adults (last updated Oct. 27, 2021).

7

suffered from, among other impairments, hypertension, low back pain, left arm and shoulder pain with tenderness, an inability to handle objects or to lift more than five pounds, and an inability to walk or stand for long periods of time. (R. 637–38).

In her decision, the ALJ reviewed Dr. Morris's findings, along with the other pertinent evidence of record. (R. 21) (citations omitted). Based upon his review of this information, the ALJ rendered the following determination regarding Dr. Morris's assessments:

> . . . [T]he undersigned is not persuaded by the opinion of [the consultative examiner, Dr. Morris], who stated the [Plaintiff] would be unable to engage in long standing or walking, [was] limited to lifting [five] pounds, [was] unable to handle objects, and would be unable to drive ([citing exhibit] B13F). The undersigned is not persuaded by this opinion for several reasons. Initially, the undersigned notes that several of the assessments of the consultative examiner appear to be based on the [Plaintiff's] subjective complaints and are not supported by his objective examination notes. For example, the [Plaintiff's] blood pressure was 111/61, yet he still assessed the [Plaintiff] to have hypertension. While the [Plaintiff] did have some reduced left upper extremity strength and left pinch and grip deficits, examination showed the [Plaintiff's] right upper extremity strength and grip to be intact, which are inconsistent with the extreme proposed lifting and handling limitations. These limitations are also inconsistent with other physical examinations that have shown the [Plaintiff] to have normal motor strength ([citing exhibits] B12F/16; B17F/9). The standing and walking limitations are inconsistent with examination findings that showed the [Plaintiff] to have intact bilateral lower extremity strength. Further, the [Plaintiff's] treatment notes overwhelmingly reflect her having a gait within normal limits ([citing exhibits] B10F/63; B17F/1, 3, 9; B18F/5). There is no explanation [as to] why the examiner thought the [Plaintiff] would be unable to drive, but [the Plaintiff's] vision testing was adequate and would not prevent her from operating a motor vehicle.

*Id.*

The Plaintiff now posits three arguments in support of her challenge to the ALJ's evaluation of Dr. Morris's opinion. (Doc. 20 at 8–10). Each of these arguments will be addressed in turn.

The Plaintiff first contends the record does not support the ALJ's statement that Dr. Morris diagnosed the Plaintiff with hypertension based "solely on [the Plaintiff's] subjective complaints." *Id.* at 8–9. To bolster this contention, the Plaintiff points to the documentation from her primary care provider, Dr. Elmer Toro, which indicates that the Plaintiff's blood pressure was elevated before and after Dr. Morris's consultative exam. *Id.* at 9. This argument fails.

To begin, contrary to the Plaintiff's assertion, the ALJ did not deem Dr. Morris's opinion to be unpersuasive only because of Dr. Morris's apparent reliance on the Plaintiff's self-reports. Rather, as the ALJ made clear in his decision, his determination was also predicated upon the fact that Dr. Morris's opinion conflicted with Dr. Morris's own "objective examination notes," including—pertinent to the Plaintiff's claim that she suffered from hypertension—the Plaintiff's blood pressure reading on the day of Dr. Morris's examination. (R. 21); *see also* 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber*, 2021 WL 3857562, at *3 (stating that the supportability factor addresses the extent to which a medical source has articulated record evidence bolstering his own opinion).

In addition, there is nothing in Dr. Morris's report that shows he ever reviewed the Plaintiff's other medical records (including those of Dr. Toro), let alone relied upon them in arriving at his opinion. *See generally* (R. 636–38). And finally, under the

9

substantial evidence standard of review, a claimant must "do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). Thus, the mere fact that there are treatment notes in the record that may cohere with Dr. Morris's assessment does not undermine the ALJ's determination that such an assessment was inconsistent with Dr. Morris's own examination records.

The Plaintiff next argues that the ALJ erred by finding that Dr. Morris's lifting and handling limitations were extreme. (Doc. 20 at 9). To buttress this assertion, the Plaintiff cites her demonstrated weakness on her left side, as well as her reports of pain in her back and left upper extremity. *Id.* She adds that these conditions "would be expected to cause significant limitations in her ability to lift, even though she had full strength in her right upper extremity." *Id.* This argument fails as well.

As a threshold matter, it is important to note that the ALJ expressly discounted the Plaintiff's "extreme pain and functional limitations" when evaluating her subjective complaints of pain elsewhere in his decision, and that the Plaintiff does not challenge this finding on appeal. (R. 20). She has therefore waived any such claim of error. *See Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)).

Moreover, the ALJ accounted for the deficits on the Plaintiff's left-side in his RFC determination (which the Plaintiff likewise does not contest) and—after observing that the Plaintiff was "right hand dominant"—found her right upper extremity strength and grip to be intact. (R. 15, 21). The ALJ also found that Dr. Morris's proposed lifting and handling limitations conflicted "with other physical examinations [which demonstrated] the [Plaintiff] to have normal motor strength." (R. 21) (citing exhibits B12F/16; B17F/9); *see also* 20 C.F.R. § 404.1520c(b)(1)–(2), (c)(1)–(2); *Barber*, 2021 WL 3857562, at *3 (stating that the consistency factor deals with whether a medical source's opinion conforms to other evidence in the record).

The Plaintiff's conjecture at this juncture that, despite the results of these other examinations and despite her 5/5 upper right extremity and grip strength, the issues she has with her left side might nonetheless substantially diminish her capacity to lift is just that, conjecture. Furthermore, by way of her argument, the Plaintiff is essentially asking that the Court re-weigh the evidence and decide anew the facts pertaining to her overall strength, which the Court cannot do. *See Carter*, 726 F. App'x at 739 (stating that a reviewing court "may not decide the facts anew" or "re-weigh the evidence"); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (observing that courts must defer to the Commissioner's decision if it is supported by substantial evidence and if the Commissioner followed the appropriate legal standards). And, as previously discussed, the fact that there may be evidence in the record that bolsters Dr. Morris's lifting and handling restrictions does not provide a sufficient basis for overturning the ALJ's properly supported determination on the

matter. *See Sims*, 706 F. App'x at 604; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that when the Commissioner's decision is supported by substantial evidence, a court must affirm it even if "the evidence preponderates against" the Commissioner's decision) (internal citation and quotations omitted).

The Plaintiff's third and final argument is that the record "fully corroborates" Dr. Morris's standing and walking limitations. (Doc. 20 at 9–10). The Plaintiff highlights in this regard certain x-rays in the record, as well as Dr. Morris's observation that the Plaintiff had a slow, antalgic gait. *Id.*

The problem with the Plaintiff's contention is that it again misconstrues the evidence upon which the ALJ relied in discounting Dr. Morris's opinion and the Court's limited role on appeal. Although the Plaintiff intimates otherwise, the ALJ did not simply ignore the other relevant information before him in evaluating the persuasiveness of Dr. Morris's standing and walking restrictions. Quite the opposite. The ALJ specifically found that these limitations were inconsistent with the "examination findings that showed the [Plaintiff] to have intact bilateral lower extremity strength," as well as the Plaintiff's "treatment notes [which] overwhelmingly reflect[ed] her [as] having a gait within normal limits." (R. 21) (citing R. 555, 651, 653, 659, 672). And while, as before, there may be support in the record for a more limited RFC on these matters, the Court is confined to determining whether the ALJ's decision is adequately substantiated by the record evidence and whether he applied the proper legal standards. *Carter*, 726 F. App'x at 739 (citing *Moore*, 405 F.3d at 1211);

*Sims*, 706 F. App'x at 604; *Miles*, 84 F.3d at 1400. As with the Plaintiff's other arguments, the Court finds that the ALJ has done so here.

### IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 4th day of November 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record